## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

HARRY J. FREESE,

      Plaintiff,

    v.

BANK OF AMERICA, et al.,

      Defendants.

CIVIL ACTION FILE NO.

1:09-CV-3675-CAP-RGV

## ORDER FOR SERVICE OF FINAL
## ORDER, REPORT, AND RECOMMENDATION

Attached is the Final Order, Report, and Recommendation of the United States

Magistrate Judge made in this action in accordance with 28 U.S.C. § 636(b)(1), Fed.

R. Civ. P. 72(b), and this Court's Local Rule 72. Let the same be filed and a copy,

together with a copy of this Order, be served upon the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file a written objection, if

any, to the Report and Recommendation within fourteen (14) days of the receipt of

this Order. Should an objection be filed, it shall specify with particularity the

alleged error or errors made (including reference by page number to the transcript

if applicable). If no objections are filed, the Report and Recommendation may be

adopted as the opinion and order of the district court and any appellate review of

factual findings will be limited to a plain error review. <u>United States v. Slay</u>, 714

F.2d 1093 (11th Cir. 1983).



EXHIBIT

G

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the district court after expiration of the above time period.

**IT IS SO ORDERED**, this 8th day of June, 2010.

*Russell G. Vineyard*

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HARRY J. FREESE,

      Plaintiff,

v.

BANK OF AMERICA, et al.,

      Defendants.

CIVIL ACTION FILE NO.

1:09-CV-3675-CAP-RGV

## MAGISTRATE JUDGE'S FINAL
## ORDER, REPORT, AND RECOMMENDATION

Plaintiff Harry J. Freese ("plaintiff") originally filed a complaint in the Superior Court of Fulton County against defendants Bank of America, N.A. ("Bank of America"), Countrywide Home Loans, Inc. ("Countrywide"), and Robert Palmer d/b/a Parsons Mortgage Group ("Palmer"),[1] alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), fraud and fraud in the inducement, and claims under the Georgia Uniform Deceptive Trade Practices Act ("UDTPA"), O.C.G.A. § 10-1-370 et seq., the Georgia Residential Mortgage Act ("GRMA"), O.C.G.A. § 7-1-1000 et seq., and the civil Racketeer Influenced Corrupt

---

[1] Countrywide is improperly referred to in the caption of plaintiff's complaint as "Countrywide Financial Corp." See [Doc. 1-2; Doc. 3-2 at 1 n.1]. Plaintiff refers to defendants "DOES 1 - 4" throughout the complaint, but they are not listed in the caption of the state court pleadings or the notice of removal.

Organizations Act ("RICO"), O.C.G.A. § 16-14-1 et seq. [Doc. 1-2].[2] Defendants

Bank of America and Countrywide ("defendants") removed the action to this Court

on December 30, 2009, based on federal question jurisdiction. [Doc. 1].[3] Pending

before the Court are defendants' motion to dismiss for failure to state a claim, [Doc.

3], which plaintiff opposes, [Doc. 6], and plaintiff's motion for leave to file an

amended complaint, [Doc. 10], which defendants oppose, [Doc. 11]. For the

following reasons, plaintiff's motion for leave to amend the complaint, [Doc. 10], is

**DENIED**, and it is **RECOMMENDED** that defendants' motion to dismiss, [Doc. 3],

be **GRANTED**.

---

[2] Plaintiff alleges that "Defendants DOE 2 [sic] is the closing attorney and legally liable for his fraud, his conspiracy of fraud in the inducement, for unlawful actions, policies and practices in inducing and convincing Plaintiffs' [sic] to execute the current mortgage on their property." [Doc. 1-2 ¶ 13]. Plaintiff claims that "Defendant Does 3 and 4 [sic] are other persons unknown at this time but Plaintiffs believe were legally responsible for ratifying the actual fraud and fraud in the inducement surrounding Plaintiff's mortgage." [Id. ¶ 14]. Additionally, plaintiff asserts in paragraph 22 of his complaint that defendants also violated the Georgia Fair Lending Act, the Home Mortgage Disclosure Act, and "Georgia Violations of the Elderly," [id. ¶ 22], but these violations are not set forth as separate counts in the complaint.

[3] The listed page numbers in citations to the record refer to the page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF. Defendants assert that Palmer was not served with process as of the date of removal, [Doc. 1 at 3 n.3], and the docket does not indicate that Palmer has been served with process or made an appearance in this case.

2

# I. BACKGROUND

According to the complaint, plaintiff refinanced three mortgage loans with Countrywide on three separate properties in August 2005. [Doc. 1-2 ¶¶ 22, 27-28]. Plaintiff alleges that the first closing, which he identifies as "the Closing," took place on August 5, 2005, and that the other two occurred on August 16, 2005. [Id. ¶ 22]. Plaintiff alleges that he contacted Countrywide, "through its agent Defendant [Palmer], a loan originator," about refinancing a mortgage in the amount of $772,800 "on their [sic] personal residence and subject property located at ____ Roswell, Georgia 30075." [Id. ¶ 27].[4]  Plaintiff does not state the refinancing amounts of the other loans.

Plaintiff asserts that "[d]efendants are either mortgage originators, mortgage lenders and/or servicers, mortgage brokers, beneficiaries, purchasers, assignees or trustees engaged in the business of prime loan which Plaintiffs could not afford long term since it was based on terms not generally accepted by the majority of lenders." [Id. ¶ 24].  Plaintiff claims that "[t]he agent, [Palmer], assured Plaintiffs that they

---

[4] Plaintiff refers throughout the complaint to multiple plaintiffs, but he is the only plaintiff listed on the docket and on the caption of the complaint filed in state court. Paragraph 31 of the complaint refers to "Plaintiff Todd Abbot," but he is not listed as a party or referenced elsewhere in the complaint. Also, plaintiff does not provide the address for the property that is the subject of the August 5, 2005, loan, see [Doc. 1-2 ¶¶ 27-28], but in his prayer for relief, he identifies the property as being located at 1270 Kearns Court, Roswell, Georgia, 30075, [id. at 36].

would get a low interest rate, low-risk, cost effective fixed rate loan and could have some cash out without raising their payments." [Id. ¶ 27].  Plaintiff asserts that at the August 5 closing, "when Plaintiffs received their Good Faith Estimate, they believed that they would be getting a fixed rate loan of $772,800 with a fixed interest rate of 1.0%," and that "Plaintiffs received a TIL disclosure statement . . . reflecting a 6.234% interest rate and payment $2,485.63, principal and interest only." [Id. ¶¶ 28-29].

At the August 5 closing, plaintiff was "handed papers in a rushed fashion, one at a time, with the closing attorney giving one sentence explanations of the document and instructed [sic] the Plaintiffs to sign it." [Id. ¶ 31].  Plaintiff claims that he has only a high school education and relied on the word of Defendant Doe 2, and if he attempted to ask questions, "the closing attorney would answer shortly in words and terms they did not understand and act as if they were stupid for even asking questions." [Id.].  Plaintiff claims he did not receive a copy of anything at the closing and never received copies of the fully executed documents. [Id. ¶ 32].

Plaintiff alleges that the "first 1 years [sic] were interest only, a term which was NEVER explained to Plaintiff, and they had no clue that the terms had changed from a fix rate loan [sic]." [Id. ¶ 34].  Plaintiff asserts that "the lender, through its agent [Palmer], placed Plaintiffs in a loan that was not fixed and used terms and a

4

margin that was predatory in nature." [Id. ¶ 37]. In June 2009, "after the payments kept rising to their dismay, Plaintiff went through their documents and discovered that they had an interest only loan for 5 years and an adjustable rate mortgage." [Id. ¶ 39].

Plaintiff asserts that "Plaintiffs did not receive their CORRECT Truth in Lending . . . statement 72 hours prior to closing," "did not receive their HUD-1 at least 24 hours prior to closing which would again [give] them time to go over the documents and costs," and that although a good faith estimate was provided on August 5, an accurate estimate was never received prior to closing. [Id. ¶¶ 42, 44-45]. Defendants allegedly "withheld material information concerning the terms of this new mortgage, [plaintiff's] ability to pay and the mortgage market as a whole and made false and misleading statements to entice them into a long term financial commitment which they could not afford." [Id. ¶ 57]. Plaintiff also alleges generally that he did not receive copies of closing documents "related to the Transaction." [Id. ¶¶ 32, 67].

## II. STANDARD ON MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the court must accept the

plaintiff's allegations as true and construe the complaint in the plaintiff's favor. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993). "Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' The complaint need only provide enough information to give a defendant fair notice of the plaintiff's claim and the grounds the claim is based on." Broner v. Washington Mut. Bank, FA, 258 Fed. App. 254, 256 (11th Cir. 2007) (per curiam) (unpublished) (quoting Fed. R. Civ. P. 8(a)(2)).[5]

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks, citations, and brackets omitted). To survive a motion to dismiss, a complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level," id., as the complaint must contain

---

[5] Likewise, Federal Rule of Civil Procedure 10(b) requires that claims be set forth in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b); Cooley v . Great S. Wood Preserving, 138 Fed. App. 149, 152 (11th Cir. 2005) (per curiam) (unpublished) (citations omitted).

"enough facts to state a claim to relief that is plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). The Supreme Court in Iqbal held:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief."

129 S. Ct. at 1949-50 (internal marks and citations omitted).

## III. DISCUSSION

A.   **Defendants' Motion to Dismiss, [Doc. 3]**

Defendants argue that plaintiff's complaint should be dismissed because it is a shotgun pleading that does not satisfy the pleading requirements of the Federal Rules of Civil Procedure. [Doc. 3-2 at 3-6]. Defendants also contend that plaintiff's complaint fails to state a claim upon which relief can be granted and should be

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). [Id. at 6-21]. The Court will address each of these arguments.

### 1.    Shotgun Pleading

Defendants assert that plaintiff's complaint is a shotgun pleading in that "most of the allegations incorporated into each count are conclusory and contain no facts supporting them," and because the complaint "completely fails to distinguish among the seven purported [d]efendants – four of which are completely unidentified." [Doc. 3-2 at 4]. Plaintiff's only response to this argument is that the complaint was drafted by plaintiff *pro se* and "therefore contains more information than may be required to put Defendant on notice," but plaintiff "denies it is either speculative, or unspecific." [Doc. 6 at 4].[6]

Plaintiff's complaint "is a quintessential 'shotgun' pleading of the kind [the Eleventh Circuit has] condemned repeatedly, beginning at least as early as 1991." Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (*per curiam*). See also Davis

---

[6] Plaintiff's counsel claims that the complaint was originally drafted *pro se*, [Doc. 6 at 4], but defendants point out that the complaint was signed by the same attorney who submitted plaintiff's brief in opposition to defendants' motion to dismiss, [Doc. 9 at 2 n.2; see Docs. 1-2 & 6]. Moreover, "as an attorney signing a complaint, [plaintiff's counsel] is always responsible for making *reasonable and diligent inquiry's* as to the legal and factual basis supporting each claim asserted prior to filing *any complaint*." Crumption v. St. Vincent's Hosp., 174 F.R.D. 493, 494 (N.D. Ala. 1997). See also Fed. R. Civ. P. 11(b).

v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 979 (11th Cir. 2008) ("The complaint is a model 'shotgun' pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years . . . ."). "It is in no sense the 'short and plain statement of the claim' required by Rule 8 of the Federal Rules of Civil Procedure." Magluta, 256 F.3d at 1284 (citation omitted). In fact, plaintiff's complaint "is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the . . . defendants charged." Id. See, e.g., [Doc. 1-2 ¶¶ 48-49, 51, 55-58, 68, 76, 78]. "[I]n a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient." Roundtree v. Countrywide Home Loans, Inc., No. 3:09-cv-189-J-32TEM, 2009 WL 5215334, at *4 (M.D. Fla. Dec. 29, 2009) (citation omitted).

Moreover, each count incorporates by reference the allegations made in the previous paragraphs, which results in each count being "replete with factual allegations that could not possibly be material to that specific count." Magluta, 256 F.3d at 1284. "This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts . . . and is the type of complaint that [the Eleventh Circuit has] criticized time and again." Id. (citations omitted).

9

Plaintiff's complaint fails to describe in sufficient detail the allegations of conduct by each defendant in connection with each cause of action. <u>Roundtree</u>, 2009 WL 5215334, at *5; <u>Popham v. Cobb County</u>, Civil Action File No. 1:09-CV-1477-BBM, 2009 WL 2425954, at *2 (N.D. Ga. Aug. 5, 2009). Because "[t]his is a classic impermissible 'shot gun' complaint, failing to comply with Rules 8 and 10, Federal Rules of Civil Procedure, as well as with the legal standards to be met in order to survive a motion to dismiss," plaintiff's complaint is subject to dismissal. <u>Roundtree</u>, 2009 WL 5215334, at *4.[7]

Additionally, "when a complaint is grounded in fraud, as . . . [plaintiff's] complaint is, the complaint must comply with Fed.R.Civ.P. 9(b)'s heightened pleading requirement that [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." <u>Id.</u> (alteration in original) (internal marks and citation omitted).[8] As discussed hereinafter, plaintiff

---

[7] Plaintiff also references certain exhibits in his complaint, but the documents attached to the complaint are not labeled as different exhibits, and it is not entirely clear to which particular documents the plaintiff is referring in citing these "exhibits." <u>See</u> [Doc. 1-2 ¶¶ 28-29, 33, 45, 49].

[8] Rule 9(b) "'serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior.'" <u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (<i>per curiam</i>) (<u>quoting Durham v. Bus. Mgmt. Assocs.</u>, 847 F.2d 1505, 1511 (11th Cir. 1988)) (internal marks omitted).

10

has failed to plead with particularity a fraud claim anywhere in his complaint and

has therefore failed to satisfy Rule 9(b).

Plaintiff also sets forth in his response brief and affidavits attached to his

response new factual allegations not found in the complaint. See [Doc. 6]. However,

plaintiff's opposition cannot act as an amendment to the complaint. Posner v. Essex

Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999) (*per curiam*) ("Where a request for leave

to file an amended complaint simply is imbedded within an opposition

memorandum, the issue has not been raised properly").[9]  Nevertheless, since

plaintiff's proposed amended complaint includes several of the new allegations

asserted in his response brief, the Court will address these allegations in connection

with ruling on the motion to dismiss. See [Doc. 10-2].

---

[9] Generally, the Court "may not consider matters outside the pleadings without converting the motion [to dismiss] to a motion for summary judgment." Redding v. Tuggle, No. 1:05-cv-2899-WSD, 2006 WL 2166726, at *5 (N.D. Ga. July 31, 2006), adopted at *1.  See also Omega Patents, LLC v. Lear Corp., No. 6:07-cv-1422-Orl-31DAB, 2008 WL 821886, at *1 (M.D. Fla. Mar. 20, 2008).  However, the Court may consider an exhibit without converting the motion into a motion for summary judgment if it is "central to the plaintiff's claim and the authenticity of the document is not challenged." Adamson v. Poorter, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (*per curiam*) (unpublished) (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)). See also Atwater v. Nat'l Football League Players Ass'n, Civil Action No. 1:06-CV-1510-JEC, 2007 WL 1020848, at *3 (N.D. Ga. Mar. 29, 2007). Plaintiff has not asserted that the various documents attached to his response are central to the claims alleged in his complaint, and defendants have challenged these documents and requested that they be stricken, [Doc. 9 at 3]. Accordingly, the Court will not consider the contested documents that are outside the pleadings.

11

2.      Merits of Plaintiff's Claims

a.      *TILA Disclosure*

Plaintiff alleges in Count 2 that "Defendants" failed to "provide TILA Disclosures materially related to this consumer credit transaction" by "failing to provide the required disclosures prior to the consummation of the transaction," "failing to make required disclosures clearly and conspicuously in writing," "failing to properly identify property subject to a security interest," "failing and improperly disclosing the finance charge," "failing to properly and accurately disclose the Amount Financed," and "fail[ing] to provide and include in the loan documents two (2) copies, notices of the right to cancel or rescind." [Doc. 1-2 ¶ 91].[10] Plaintiff's claim is due to be dismissed for the following reasons.[11]

_____

[10] Although plaintiff's TILA disclosure claim is alleged in Count 2, the Court will address this claim first before turning to the TILA rescission claim alleged in Count 1.

[11] Plaintiff has not alleged any facts regarding the relationship between Bank of America and Countrywide other than the allegation that "Bank of America is an assignee of the mortgage originally held by [Countrywide] on the subject property and is currently the Servicer of mortgage loan transactions pursuant to a Master Pooling and Servicing Agreement." [Doc. 1-2 ¶ 11]. Plaintiff does not specify which mortgage Bank of America is servicing, but to the extent it is the loan servicer for all three of the mortgages referenced in the complaint, Bank of America, as a loan servicer, is not liable under TILA as "TILA applies to creditors and assignees of creditors." Petracek v. Am. Home Mortgage Servicing, No. 2:09-cv-001403-GEB-KJM, 2010 WL 582113, at *1 (E.D. Cal. Feb. 11, 2010). Indeed, "[u]nder [15 U.S.C.] § 1641(f)(1), loan servicers shall not be treated as an assignee of [a consumer] obligation for purposes of [TILA] unless the servicer is or was the owner of the

The purpose of TILA is

> to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices. Accordingly, the Act requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights.

Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998) (internal marks and citations omitted).  An action under TILA must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  Because TILA is a disclosure statute, "[t]he violation 'occurs' when the transaction is consummated," since that is the date on which the legal obligation for the lender to make the disclosures arises.  In re Smith, 737 F.2d 1549, 1552 (11th Cir. 1984).  Thus, plaintiff should have filed his TILA claim within one year from the date of closing.  See Insignares v. Countrywide Home Loans, Inc., No. 09-60128-CIV, 2009 WL 2444322, at *1 (S.D. Fla. July 15, 2009) (citing Smith, 737 F.2d at 1552).  Here, although the loan closings occurred in August 2005, [Doc. 1-2 ¶ 22], plaintiff filed his original complaint in state court on or about

---

obligation."  Id. (internal marks and citation omitted).  Plaintiff has not specifically alleged that Bank of America ever owned the loan obligation, but he does indicate that Bank of America is an assignee of the loan, and "TILA provides that assignees of a loan may be liable for TILA violations."  Marks v. Ocwen Loan Servicing, No. C 07-02133 SI, 2008 WL 344210, at *2 (N.D. Cal. Feb. 6, 2008) (citing 15 U.S.C. § 1641(d)(1)).  Therefore, the Court will address the merits of plaintiff's allegations against Bank of America as an assignee of the loan.

13

November 25, 2009, more than four years later, [id. at 3]. Therefore, plaintiff's TILA claim in this regard is barred by the applicable statute of limitations with regard to all of the loan transactions at issue.

Plaintiff argues that TILA's statute of limitations in this case is subject to equitable tolling. [Doc. 6 at 12-19]. Plaintiff asserts that the "fraud and fraud in the inducement as alleged in [p]laintiff's [c]omplaint is directly applicable to [p]laintiff's remedy of 'Equitable Tolling,'" and that such fraud is a "direct and proximate result of [d]efendants, [Palmer and Countrywide's] 'Self Concealing Wrong.'" [Id. at 13]. Plaintiff argues that he "could not trigger the statute of limitations until he had a reasonable opportunity to discover the violations, including, but not limited to those alleged in [p]laintiff's [c]omplaint." [Id. at 13-14].

To establish that equitable tolling is warranted, plaintiff must show that: (1) defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing; (2) plaintiff was not on actual or constructive notice of that evidence; and (3) plaintiff exercised due diligence. Bryant v. Mortgage Capital Res. Corp., 197 F. Supp. 2d 1357, 1367 (N.D. Ga. 2002); see also Williams v. Saxon Mortgage Servs., Inc., No. Civ.A. 06-0799-WS-B, 2007 WL 2828752, at *4 (S.D. Ala. Sept. 27, 2007). Equitable tolling should be "applied sparingly," Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and only "in extreme cases where failure to invoke

14

the principles of equity would lead to unacceptably unjust outcomes," Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (citations omitted). Equitable tolling will apply only "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Downs, 520 F.3d at 1319 (quoting Steed, 219 F.3d at 1300).

As to the first element of equitable tolling, plaintiff argues that under the doctrine of "self concealing wrong," a plaintiff does not need to plead, or prove, affirmative acts by a defendant to conceal its wrongdoing or prevent the plaintiff from learning of it. [Doc. 6 at 18]. In Pedraza v. United Guaranty Corporation, 114 F. Supp. 2d 1347, 1354-58 (S.D. Ga. 2000), the district court explained that "self-concealing wrong" is one of two methods a plaintiff may use to show that a defendant engaged in a course of conduct designed to conceal evidence of his alleged wrongdoing:

> The first method, described redundantly as "active concealment," occurs when the defendant successfully conceals the existence of the plaintiff's cause of action against him despite the plaintiff's exercise of due diligence. The second way, known as a "self-concealing wrong," occurs when the defendant commits the substantive wrong in such a way "as to conceal the very existence of a cause of action, and . . . misleads [the] plaintiff in the course of committing the wrong." Hobson v. Wilson, 737 F.2d 1, 33 (D.C. Cir. 1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed. 2d 142 (1985). Thus, in the first case "additional acts of concealment [beyond the substantive wrong] are required to trigger the tolling doctrine," whereas in the second case, "concealment is established by the nature of the act." Id.

15

Id. at 1354 (alteration in original).

However, the Pedraza court explained that, even in the case of an alleged self-concealing wrong, to invoke equitable tolling, "a plaintiff must satisfy Federal Rule of Civil Procedure 9(b)'s requirement to plead with particularity in [his] complaint the facts giving rise to a claim of fraudulent concealment before a federal court will toll the statute of limitations." Id. at 1356 (citations omitted). "This includes alleging the specific conduct of the defendant that entitles the plaintiff to toll the statute against that defendant." Id. (citing Brooks, 116 F.3d at 1381 & O'Brien v. Nat'l Property Analysts Partners, 719 F. Supp. 222, 232 (S.D.N.Y.1989) ("court described plaintiffs' failure to specify which defendant committed which act of concealment [as] 'fatal' to their claim, for allegations that one of several defendants acted to deceive plaintiffs does not toll statute of limitations against all defendants")). Plaintiff has failed to satisfy Rule 9(b) by describing the specific wrongdoing committed by each defendant that warrants equitable tolling.

Moreover, "the overwhelming weight of authority . . . favors the view that, absent some affirmative deception by defendants, the mere nondisclosure of fees later charged to plaintiffs does not, by itself, justify equitable tolling of the TILA limitations period." Williams, 2007 WL 2828752, at *4 (internal marks and citation omitted). "Under this prodigious line of precedents, a TILA plaintiff who attempts

16

to avail himself of equitable tolling must establish some fraudulent conduct or concealment other than the mere nondisclosure in the loan documents that constitutes the TILA violation itself." Id. See also Gates v. Ohio Savings Bank Ass'n, No. 1:06 CV 678, 2007 WL 2713897, at *4 (N.D. Ohio Sept. 17, 2007) (applying doctrine of equitable tolling in TILA context "requires more than mere non-disclosure by Defendant"); Veal v. Crown Auto Dealerships, Inc., 236 F.R.D. 572, 580 (M.D. Fla. 2006) ("The majority of district courts that have addressed the issue [of equitable tolling of the TILA limitations period] have required fraudulent conduct beyond the non-disclosure."); In re Cmty. Bank of N. Va., 467 F. Supp. 2d 466, 479 (W.D. Pa. 2006) ("the fraudulent act(s) that provide the factual predicate for the claim, i.e. inaccurate loan documents, cannot also satisfy the factual predicate justifying equitable tolling"). Thus, any argument that the statute of limitations should be tolled based on alleged fraudulent concealment of the loan documents or undisclosed fees being charged to plaintiff is unavailing.

Even if plaintiff could establish the first element for equitable tolling, he has failed to satisfy the notice and due diligence elements. The notion that plaintiff did not have actual or constructive notice of alleged wrongdoing, or that he could not have uncovered wrongdoing through the exercise of due diligence, is undermined by his own argument that "any subsequent review of [the] Loan Packages

17

[compared to the loan applications] would reveal a gross error in that the interest rate is misstated, the amortization is misstated, and the 'fixed' characterization is misstated," and his assertion that "mistakes [in the loan terms] are obvious from a simple reading of the Uniform Residential Local Application . . . when compared to [documents executed at the closing]." [Doc. 6 at 6-7, 20]. However, plaintiff argues that he suffers from disabilities that impacted his ability to "both understand and visually review the documents from his 'closing.'" [Id. at 14; Doc. 6 (Freese Aff.) at 23-25]. Specifically, he asserts that he suffered near complete hearing loss in his right ear and partial loss of hearing in his left ear, suffered a stroke in 2005 that impaired his vision, was hospitalized due to a serious injury for six months in 2006, and had experienced heart problems for the past 15 years that caused him to be unable to look after his affairs. [Doc. 6 at 14]. Plaintiff claims that each of these problems "impacts directly on [his] ability to recognize the mistakes, or noticing [sic] larger than expected mortgage payments, and thus not [sic] realize the fraud that had occurred in August of 2005." [Id.].

These allegations were not included in plaintiff's original complaint, but in any event, he has not shown that his hearing, vision, or heart problems prevented him from having actual or constructive notice of the alleged wrongdoing or exercising the requisite due diligence after the loan closings, causing him to wait

18

Case 1:09-cv-03675-CAP  Document 12  Filed 06/08/2010  Page 21 of 42

over three years after the statute of limitations expired to file his lawsuit. See House v. Cal State Mortgage Co., No. CV-F-08-1880 OWW/GSA, 2009 WL 2031775, at *8 (E.D. Cal. July 9, 2009) (finding that equitable tolling based on plaintiff's mental disability not warranted where plaintiff did not allege specific facts concerning the nature of the disability, and the appointment of a conservator after the limitations period expired did not demonstrate that plaintiff was entitled to equitable tolling based on mental incapacity at the time the loans were obtained).  Plaintiff has not specifically argued that his vision or hearing problems actually prevented him from reading or understanding the documents or that he was prevented from having someone assist him at the loan closings or thereafter.  See Huh v. Chase Home Finance, Civil Action No. 1:09-CV-2292-CAP-WEH, [Doc. 21 at 18-19], (N.D. Ga. Dec. 7, 2009), adopted at [Doc. 31] (allegations that the plaintiff could speak and read "very limited English" were insufficient to show she was prevented from reading the loan documents because the plaintiff could have brought an interpreter).

Plaintiff also argues that no attorney was present at the closing to "explain the transaction to [plaintiff]," that one page of the closing documents reveals one amortization while another page reveals another, and that although plaintiff signed the closing documents on August 5, 2005, they were dated August 16, 2005. [Doc. 6 at 15].  However, plaintiff's argument that no attorney was present to explain the

closing documents to him directly contradicts his allegation in the complaint that at the August 5 closing, defendant "Doe 2," the "closing attorney," gave him "one sentence explanations of the [closing] document[s] and instructed the Plaintiffs to sign it." [Doc. 1-2 ¶ 31]. Plaintiff cannot seek equitable tolling on the basis of an argument that is inconsistent with the allegations in the complaint regarding the presence of an attorney at the closing.[12] Moreover, although plaintiff alleges that the closing took place at Palmer's house, he does not explain how this circumstance (or the presence or absence of an attorney) prevented him from discovering any alleged fraud within the limitations period.

Plaintiff has not satisfied the requirements for invoking equitable tolling of TILA's statute of limitations. He has simply not shown that discovery of any alleged wrongful act by any of the defendants was either beyond his control or unavoidable even with diligence. Bryant, 197 F. Supp. 2d at 1367-68. Plaintiff's arguments are largely based on vague allegations of fraud committed by the various defendants, including the failure to provide plaintiff with certain documents at an unspecified closing, different interest rates and amortizations being presented to plaintiff on different pages of the closing documents, and "Defendant's receiv[ing] . . . in excess

---

[12] Likewise, plaintiff's assertion that he signed all of the closing documents on August 5 but that they were dated August 16 contradicts his allegation in the complaint that two of the closings did occur on August 16, 2005. [Doc. 1-2 ¶ 22].

of $55,000 in loan origination fees, yield spread premium, and attorney fees." [Doc. 6 at 12-13, 15-16, 18]. These vague allegations fail to establish that equitable tolling is warranted, and his TILA disclosure claims are due to be dismissed.

### b.   *Rescission Claim*

Plaintiff alleges in Count 1 that unspecified defendants violated TILA because they failed to "provide accurate material disclosures correctly and with a proper Notice of Right of Rescission," and that "Plaintiffs are [therefore] entitled and has [sic] exercised their right of rescission." [Doc. 1-2 ¶¶ 80-88]. However, plaintiff has not actually shown that he is entitled to rescind any of the transactions, and even were he entitled to rescind the loans, his claim would also be time-barred.

Under 15 U.S.C. § 1635(a), in the case of a consumer credit transaction in which a "security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required . . . together with a statement containing the material disclosures required . . ., whichever is later, by notifying the creditor." The three-day rescission period expands to three years after consummation, or upon the sale of the property,

"whichever occurs first," if the "required notice or material disclosures are not delivered." 12 C.F.R. § 226.23(a)(3); <u>Smith v. Highland Bank</u>, 108 F.3d 1325, 1326 (11th Cir. 1997) (*per curiam*).

As previously stated, plaintiff's loan closings with regard to the three properties at issue occurred in August 2005. [Doc. 1-2 ¶ 22]. Therefore, even if plaintiff had a three-year window in which to rescind the transaction, it terminated on August 5, 2008, for the first loan transaction, and August 16, 2008, for the other two transactions, but plaintiff alleges that he did not send a notice to rescind until on or about November 17, 2009. [Doc. 1-2 ¶ 70]. <u>See</u> 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3); <u>Velardo v. Fremont Inv. & Loan</u>, 298 Fed. App. 890, 892 (11th Cir. 2008) (*per curiam*) (unpublished) ("If the creditor fails to deliver the forms, or fails to provide the required information, then the consumer's right of rescission extends for three years after the date of consummation of the transaction, or until the property is sold, whichever occurs first.") (citations omitted). To the extent plaintiff's arguments regarding equitable tolling were intended to apply to his TILA claim for rescission, the arguments are without merit as "[e]quitable tolling does not apply to claims for rescission under TILA, because '§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period.'" <u>Dixon v. Countrywide Home Loans, Inc.</u>, No. 10-80216-CIV, 2010 WL 1838658, at *7 (S.D. Fla. May 7, 2010)

22

(quoting Beach, 523 U.S. at 412). Therefore, plaintiff's TILA claim seeking rescission is time-barred.[13]

Plaintiff's complaint also "fails to put [d]efendants on notice as to what triggered the right to rescind." Jozinovich v. JP Morgan Chase Bank, N.A., No. C09-03326 TEH, 2010 WL 234895, at *5 (N.D. Cal. Jan. 14, 2010). Plaintiff alleges that he did not receive the following: (a) Good Faith Estimate; (b) HUD-1 Settlement

---

[13] Furthermore, to the extent any of the loans were not secured by plaintiff's principal dwelling, his claim for rescission fails as "'a debtor's right to rescind arises only when the loan transaction is secured by the debtor's principal dwelling.'" Va. Cmty. Bank v. Fisher, Civil Action No. 3:09cv354, 2009 WL 4430282, at *6 (E.D. Va. Dec. 1, 2009) (quoting Antanuos v. First Nat'l Bank of Ariz., 508 F. Supp. 2d 466, 470 (E.D. Va. 2007)) (internal marks and citation omitted). Indeed, "TILA's requirements do not apply to extensions of credit primarily for business or commercial purposes." Dunn v. Meridian Mortgage, Civil Action No. 3:09CV00018, 2009 WL 1165396, at *2 (W.D. Va. May 1, 2009) (citing 12 C.F. R. § 226.3 (2009)). "The Act applies only to credit transactions secured by real or personal property used or expected to be used as the principal dwelling of the debtor." Id. (internal marks and citation omitted). "Credit transactions secured by real or personal property used for other purposes . . . fall outside the scope of TILA's coverage." Id. (internal marks and citation omitted). Here, plaintiff alleges that he is the owner of "the principal dwelling known as . . . Roswell, Ga. 30075 (hereinafter the 'Subject Property'), and . . . Atlanta, Georgia 30350 and . . . Atlanta, Georgia 30350 which is currently collateral on a secured first mortgage loan originally held by [Countrywide]." [Doc. 1-2 ¶ 8]. This allegation indicates that the two Atlanta properties were not his principal dwelling at the time of the loan closings as "[a] consumer can only have one principal dwelling at a time." Va. Cmty. Bank, 2009 WL 4430282, at *6 (internal marks and citations omitted). Because TILA "specifically exempts rights of rescission for credit transactions covering property that is not the borrower's principal dwelling," plaintiff has no right to rescind the transactions in relation to the two Atlanta properties. Laporte v. Wells Fargo Bank, N.A., No. 3:08-cv-376, 2009 WL 2146324, at *3 & n.7 (E.D. Tenn. July 14, 2009). See also Va. Cmty. Bank, 2009 WL 4430282, at *6.

Statement; (c) Handbook on Adjustable Rate Mortgages; (d) Right to Cancel Notices; (e) Business Affiliations Disclosure; (f) Disbursal Disclosures; (g) Itemization of Amount Financed Disclosure; (h) Equal Credit Opportunity Act Disclosure; and (i) Truth in Lending Disclosure. [Doc. 1-2 ¶ 67]. Plaintiff asserts that "[a]s a result of Defendants failure to provide any [TILA] Disclosure Statement with accurate 'Finance Charges, Annual Percentage Rate, Amount Financed, and Total of Payments' under 15 U.S.C. 1602(u), and failure to provide all material disclosures correctly with a proper Notice of Right of Rescission . . . , [p]laintiffs . . . did exercise their right of rescission of the Transaction without further notice." [Id. ¶ 69]. However, as stated, plaintiff does not specify which defendants are responsible for the alleged failure to provide these documents or which documents were actually not provided in relation to each particular transaction. Thus, plaintiff's claim for rescission "fails to give [d]efendants fair notice as to the basis for the claim." Jozinovich, 2010 WL 234895, at *5. Accordingly, it is **RECOMMENDED** that plaintiff's TILA claims be **DISMISSED**.[14]

---

[14] Since the TILA claims are the only federal law claims alleged in the original complaint, and it is recommended that they be dismissed, the Court could decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss the case without prejudice. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); Scarfo v. Ginsberg, 175 F.3d 957, 962 (11th Cir. 1999). However, in the event the Court elects to retain jurisdiction over the state law claims, the undersigned will address the defendants' arguments regarding those claims.

c.    *State Law Claims*

1.    Fraud

In support of his claim for "fraud and fraud in the inducement," plaintiff alleges, among other things, that "Defendants made false statements concerning the future value of the property, which they knew or should have known were false, which intentionally and with malice caused Plaintiffs to act by continuing the loan process despite the fact that it was not in their best interest to execute this new mortgage on their property under the terms offered." [Doc. 1-2 ¶ 93]. Plaintiff alleges that "Defendant Doe 1 specifically made numerous false and misleading statements throughout the loan process which continued through the closing and withheld and concealed material facts," that "Plaintiffs were never provided with rates or terms of any . . . other lender or other lenders rates prior to closing," and that "Plaintiffs were told they were going to have a fixed rate which was switched to an ARM at closing but this was not disclosed by the closing attorney, Defendant Doe 2." [Id. ¶¶ 97, 102].[15]

---

[15] Plaintiff has not specifically responded to defendants' arguments regarding his state law claims, with the exception of defending his fraud and fraud in the inducement claims and stating in conclusory fashion that the complaint is "replete with facts indicating," among other things, violations of the UDTPA and GRMA. [Doc. 6 at 4]. Since plaintiff has not responded to the defendants' arguments regarding the remaining state law claims, the motion to dismiss these claims on the grounds raised by defendants is deemed unopposed. See Chandler v. Cronic, Civil Action No. 2:08-cv-0154-RWS, 2009 WL 3158181, at *2 (N.D. Ga. Sept. 23, 2009).

25

As an initial matter, defendants point out that plaintiff's claims for fraud and fraud in the inducement are time-barred. [Doc. 3-2 at 7]. O.C.G.A. § 9-3-31 requires that actions be brought within four years after the right of action accrues. See Willis v. City of Atlanta, 595 S.E.2d 339, 343 (Ga. App. 2004). Plaintiff's fraud allegations with respect to the mortgage loans occurred prior to the respective loan closings or are based on the closing documents themselves, and thus were either known or should have been known by plaintiff at the time of the respective closings. "The statute of limitations begins to run on a cause of action on the date that suit on the claim can first be successfully maintained," Limoli v. First Ga. Bank, 250 S.E.2d 155, 156 (Ga. App. 1978), and "[a] claim of fraudulent inducement in the execution of a contract accrues on the date of the execution of the contract," Kerce v. Bent Tree Corp., 305 S.E.2d 462, 462 (Ga. App. 1983). Accordingly, plaintiff's fraud claims are barred by the statute of limitations, and plaintiff has not shown that equitable tolling is warranted.

Additionally, as previously discussed, plaintiff's complaint fails to satisfy Rule 9(b), which is fatal to his fraud claims. "To satisfy Rule 9(b)'s 'particularity' standard, a complaint should 'identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff;

26

and (4) what the Defendants gain[ ] by the alleged fraud.'" <u>Roundtree</u>, 2009 WL 5215334, at *4 (<u>quoting</u> <u>W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.</u>, 287 Fed. App. 81, 86 (11th Cir. 2008) (*per curiam*) (unpublished) (citation omitted)).   Plaintiff fails to identify in his complaint the specific statements, documents, or misrepresentations made by either Bank of America or Countrywide, the time and place at which Bank of America or Countrywide made any false statements, provided false documents, or misrepresented anything, the content and manner of any false statements or misrepresentations, or what Bank of America or Countrywide specifically gained by their alleged fraud. <u>See</u> <u>Roundtree</u>, 2009 WL 5215334, at *4.  In fact, the only defendant plaintiff alleges under his fraud count made any misrepresentations was the unidentified "Defendant Doe 1."   Thus, plaintiff has failed to meet Rule 9(b)'s requirement that he plead fraud with particularity, and he has not properly put Bank of America or Countrywide on notice of his claims.

Moreover, defendants point out that plaintiff's contentions that the various defendants made false promises about the future value of his property and his ability to refinance the loans, [Doc. 1-2 ¶¶ 48, 93], his claims that Countrywide or Bank of America's approval of the loan was a false representation that plaintiff could afford the loans, [<u>id.</u> ¶¶ 26, 51, 57, 93], and his fraud claims based on concealment,

[id. ¶¶ 51, 94, 97, 115], are not actionable under Georgia law, [Doc. 3-2 at 12-15]. See

Coote v. Bank Banking & Trust Co., 664 S.E.2d 554, 556-57 (Ga. App. 2008) (plaintiff

not entitled to rely on bank's advice not to get appraisal, or appraisal procured by

bank as opinion of value of real estate, because there was no confidential

relationship between the bank and borrower); Koncul Enters. v. Fleet Fin., Inc., 630

S.E.2d 567, 570 (Ga. App. 2006) ("Fraud cannot consist of mere broken promises,

expressions of opinion, unfulfilled predictions or erroneous conjecture as to future

events.") (internal marks and citation omitted); Infrasource, Inc. v. Hahn Yalena

Corp., 613 S.E.2d 144, 146 (Ga. App. 2005) ("[A]n obligation to disclose must exist

before a party may be held liable for fraud based upon the concealment of material

facts," and "[i]n the absence of a confidential relationship, no duty to disclose exists

when parties are engaged in arm's-length business negotiations") (internal marks

and citation omitted); Dollar v. NationsBank of Ga., N.A., 534 S.E.2d 851, 853 (Ga.

App. 2000) ("NationsBank had no duty to [plaintiff] to accurately make [flood zone]

determinations, and [plaintiff] was not entitled to rely on NationsBank's

representations"); First Union Nat'l Bank of Ga. v. Gurley, 431 S.E.2d 379, 381 (Ga.

App. 1993) ("a bank owes no legal duty to act as a customer's legal or financial

28

advisor"). Thus, plaintiff's claims for fraud and fraud in the inducement are due to be dismissed.[16]

### 2.    Uniform Deceptive Trade Practices Act

In Count 4, plaintiff asserts violations of the UDTPA. [Doc. 1-2 ¶¶ 118-25]. Plaintiff alleges that "Defendants, specifically through their agent, Defendant Doe 1 systematically mislead [sic] the Plaintiffs about every single aspect of their new mortgage loan, including but not limited to, the rate, the costs and the terms of this new loan," that "Defendants engaged in deceptive marketing practices assuring Plaintiffs that they would get a low cost, fixed-rate loan on their property when in fact the loan was high cost and had an adjustable rate with a predatory margin," and

---

[16] Plaintiff argues that his pleading is "sufficient and identifies circumstances relating to Defendant's fraud and Defendant's fraud in the inducement" as the "Loan Applications by themselves show on their face representations that are clearly deceptive, [and] any subsequent reading of these closing documents would draw the transaction and it's [sic] terms into immediate question." [Doc. 6 at 21]. Plaintiff argues that the "Loan Applications that he signed have an interest rate, an amortization and are characterized as a fixed loan product, when in fact and truth the loans were not of this nature," which "give[s] rise to a . . . 'sufficient identification' . . . of the fraud, and the fraud in the inducement." [Id. at 22; see Doc. 1-2 at 45-49, 62-66, 67-70 (loan applications)]. Although "[a] complaint that fails to describe particularized fraudulent acts can still comply with Rule 9(b) if it can be read together with other documents in the record to establish specific allegations of fraud," Ga. Farm Bureau Mut. Ins. Co. v. Great Am. Excess & Surplus Ins. Co., Civil Action No. 1:06-CV-0696-JOF, 2007 WL 757816, at *3 (N.D. Ga. Mar. 8, 2007), the documents plaintiff refers to do not cure the deficiencies in his complaint by clarifying which defendants were responsible for the alleged misrepresentations or by stating sufficiently specific allegations of actionable fraud.

29

that "Defendants lead Plaintiffs to belief [sic] the loan they executed was the best for them in all aspects despite the high, undisclosed costs." [Id. ¶¶ 121-23].

The UDTPA makes it unlawful to engage in specifically enumerated deceptive business practices. O.C.G.A. § 10-1-372(a). However, plaintiff's claims are barred by the same four-year statute of limitations that bars his fraud claims. See O.C.G.A. § 9-3-31; Kason Indus. v. Component Hardware Group, Inc., 120 F.3d 1199, 1205 (11th Cir. 1997) ("We thus deem the four-year limitations period set forth in § 9-3-31 the proper statute of limitations for the UDTPA to borrow."). Moreover, plaintiff's allegations are premised on the same allegations of fraud that fail to satisfy Rule 9(b), and his claim is due to fail for these reasons.[17]

### 3.    Georgia Residential Mortgage Act

Plaintiff also alleges violations of the GRMA. [Doc. 1-2 ¶¶ 126-37]. The GRMA "prohibits any person transacting a mortgage business in the state of Georgia from engaging in various enumerated unfair practices." Jackson, et al. v. Premium

---

[17] Furthermore, the only relief available under the UDTPA is injunctive relief, not monetary relief. Moore-Davis Motors, Inc. v. Joyner, 556 S.E.2d 137, 140 (Ga. App. 2001). Thus, to the extent plaintiff seeks monetary relief under the UDTPA, [Doc. 1-2 ¶ 119], his claims should be dismissed. Because the sole remedy is injunctive relief, plaintiff must show that he is "likely to be damaged" by defendants' conduct in the future. O.C.G.A. § 10-1-373(a); see Catrett v. Landmark Dodge, Inc., 560 S.E.2d 101, 106 (Ga. App. 2002). Plaintiff has not alleged facts sufficient to show a likelihood of injury in the future, and any claim for injunctive relief he is attempting to assert under the UDTPA is due to be dismissed for this additional reason.

30

Capital Funding, LLC, et al., 1:09-cv-1392-CAM-GGB, [Doc. 42 at 5-6 (citing

O.C.G.A. § 7-1-1013)] (N.D. Ga. Mar. 17, 2010). The statute "contains enforcement

provisions which permit the Georgia Department of Banking and Finance to issue

'cease and desist' orders for violations of the GRMA and to petition courts to direct

parties to comply with the department's orders, as well as civil penalties for parties

who violate the terms of any such order and criminal penalties for certain

violations." Huh, 1:09-CV-2292-CAP-WEJ, [Doc. 21 at 22-23] (citation omitted).

However, "[u]nlike the [Georgia Fair Business Practices Act] (which authorizes the

administrator of the [Act] to issue cease and desist orders and impose civil penalties

and creates a private cause of action), the GRMA does not expressly provide a

private cause of action." Jackson, 1:09-cv-1392-CAM-GGB, [Doc. 42 at 6]. Therefore,

it is **RECOMMENDED** that plaintiff's claim under the GRMA against Bank of

America and Countrywide be **DISMISSED**.[18]

### 4.  Civil RICO

In Count 6, plaintiff attempts to assert a RICO claim against the defendants.

[Doc. 1-2 ¶¶ 138-45]. Plaintiff's RICO claim, however, suffers from the same defects

as his other claims because he makes allegations with regard to multiple defendants

without specifying how each defendant named in the complaint specifically

---

[18] Plaintiff's GRMA claims are also premised on fraud allegations, which, as already discussed, plaintiff has failed to plead with particularity.

engaged in the alleged misconduct. Therefore, this claim fails to satisfy the same heightened pleading standard that applies to plaintiff's fraud claim. See Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity.") (citing Fed. R. Civ. P. 9(b)).

Furthermore, for a state RICO claim, a plaintiff "must show that the defendant[s] committed predicate offenses (set forth in OCGA § 16-14-3(9)) at least twice." Williams v. Unum Life Ins. Co. of Am., Civil Action No. 1:07-cv-0240-JOF, 2007 WL 2479561, at *2 (N.D. Ga. Aug. 27, 2007) (internal marks and citation omitted). Here, while plaintiff asserts several state law claims, he has not alleged the requisite two qualifying predicate acts. See Williams, 2007 WL 2479561, at *2. Accordingly, it is **RECOMMENDED** that plaintiff's RICO claim against Bank of America and Countrywide be **DISMISSED**.[19]

## B.   Plaintiff's Motion to Amend the Complaint, [Doc. 10]

In plaintiff's motion for leave to file an amended complaint, he argues that the Court should allow the filing of an amended pleading in this matter "in that [p]laintiff has deficiencies in the original [c]omplaint, one of which [p]laintiff has no

---

[19] Because plaintiff has failed to state any valid claims for relief, his claims for injunctive relief in Count 7 and for punitive damages in Count 8 are likewise due to be dismissed.

other means to obtain further information on to litigate." [Doc. 10 at 2].[20] Plaintiff

asserts that "the Defendants will not be prejudiced by the amended pleading

because the amended pleading is appropriate to this cause and involves in-part

claims only recently discovered by the [p]laintiff involving his homeowner's

insurance." [Id.]. Plaintiff's amended complaint "re-alleges and incorporates by

reference all preceding paragraphs of his original [c]omplaint," and adds new

factual allegations and claims for violations of RESPA and the Georgia Fair Housing

Act, O.C.G.A. § 8-3-200 et seq. [Doc. 10-2].

Rule 15(a) provides, "A party may amend its pleading once as a matter of

course within . . . 21 days after serving it, or . . . if the pleading is one to which a

responsive pleading is required, 21 days after service of a responsive pleading or 21

days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed.

R. Civ. P. 15(a)(1).  However, "[i]n all other cases, a party may amend its pleading

only with the opposing party's written consent or the court's leave." Fed. R. Civ. P.

15(a)(2). "[C]onsistent with Rule 15(a)'s mandate that 'leave shall be freely given

when justice so requires,' district courts should generously allow amendments even

when the plaintiff does not have the right to amend the complaint." Williams v. Bd.

of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1292 n.6 (11th Cir. 2007) (quoting Fed.

---

[20] Plaintiff does not specify the deficiencies to which he is referring or explain what he means by not having "further information on to litigate."

R. Civ. P. 15(a)) (citation omitted).  That is, "[a] district court should not deny leave to amend 'unless there is a substantial reason.'"  Whitby v. Chertoff, Civil Action No. 5:08-CV-242 (HL), 2010 WL 431974, at *1 (M.D. Ga. Feb. 2, 2010) (quoting Burger King Corp. v. Weaver, 169 F.3d 1310, 1319 (11th Cir. 1999)).

However, "[a] motion to amend may be denied on 'numerous grounds, such as undue delay, undue prejudice to the defendants, and futility of the amendment.'"  Id. (quoting Carruthers v. BSA Adver., Inc., 357 F.3d 1213, 1218 (11th Cir. 2004) (per curiam)).  "When a motion to amend is denied based upon futility, the court makes a legal conclusion that the proposed amended complaint necessarily would fail."  Id. (citing St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co., 198 F.3d 815, 822 (11th Cir. 1999)).  That is, "[t]he futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied."  Bill Salter Adver., Inc. v. City of Brewton, Ala., Civil Action 07-0081-WS-B, 2007 WL 2409819, at *2 (S.D. Ala. Aug. 23, 2007) (citations omitted).

In the factual allegations of the proposed amended complaint, plaintiff claims that Bank of America is an assignee of "the Loan" from Countrywide, and is the servicer of "the Loan," [Doc. 10-2 ¶¶ 3-4], but he fails to specify on which loan Bank of America is an assignee and servicer, and which loans Countrywide originally

34

owned and/or assigned to Bank of America. Plaintiff makes the same allegations asserted in his original complaint that he did not receive certain documents at the "closing," [id. ¶ 12], but he does not specify the particular closing or which defendants were responsible for the alleged failure to provide them. Plaintiff claims that on or about August 5, 2005, defendant Palmer "made promises that [plaintiff] would receive the properly completed copies of the closing documents . . . 'within the next few days,'" but that plaintiff never received any documents and "paid a fee of $1,500 to obtain these copies from [the law firm of Johnson & Dickenson, the new custodian of his loan files], during August, 2009." [Id. ¶ 13]. Plaintiff also alleges that he was promised a rate of 1.375% on a 30 year fixed rate note, but he received a 6.374% rate on an adjustable rate note, and he sets forth allegations concerning the physical disabilities that allegedly prevented him from discovering any fraud. [Id. ¶¶ 14-15].

Plaintiff's proposed amended complaint does not include any allegations that cure the defects in his original complaint or that would alter the outcome of the Court's ruling on the defendants' motion to dismiss. The new factual allegations in plaintiff's proposed amended complaint do not resolve the shotgun pleading of the original complaint as plaintiff simply reincorporates and re-alleges all of the allegations in that filing, without specifying which defendants engaged in the

wrongdoing alleged in the original complaint. Plaintiff does not specify how Bank of America or Countrywide were responsible for the wrongdoing that occurred at the various closings and fails to specify whether there was more than one "closing" at which he actually suffered harm.[21]

Plaintiff's proposed new claims under RESPA and the Fair Housing Act suffer from similar deficiencies in that plaintiff again fails to specify which defendants engaged in the alleged violations of RESPA and the Fair Housing Act. For example, in support of his RESPA claim, plaintiff alleges that "Defendant's [sic] breached their obligation as servicers of the Loan Transaction, and have failed to properly account for all funds deposited with the Defendants 'in escrow' for payment of homeowner's insurance," and "Defendant's [sic] breached their obligation to properly account for the homeowner's insurance proceeds by charging both [plaintiff], and the actual homeowner's insurance company, with the same obligation." [Id. ¶¶ 19-20].[22]

With regard to the Fair Housing Act claim, plaintiff asserts that "Defendants failed to safe guard [plaintiff], a person who suffers from physical disabilities

_____

[21] Plaintiff's allegation that he was promised a rate of 1.375% on a 30 year fixed rate note, while actually receiving a 6.374% rate on an adjustable rate note, [Doc. 10-2 ¶ 14], does not specify who made this alleged promise and who was responsible for the actual rate he received.

[22] Moreover, plaintiff has not included sufficient facts to determine whether the alleged RESPA violations are within the applicable statute of limitations. See 12 U.S.C. § 2614.

36

(hearing and sight loss), from predatory lending, . . . through discriminatory targeting of [p]laintiff by the Broker and [Palmer]." [Id. ¶ 26]. Plaintiff asserts that "Defendant's Loan product promoted the refinancing of Plaintiff's principal dwelling into a product that was by design one that would ultimately deprive [plaintiff] of his personal dignity and freedom from humiliation through loss of his home," and that "Defendant's targeting of [p]laintiff created willful discriminatory practices that will ultimately deprive [p]laintiff of his legal rights." [Id. ¶ 27]. Plaintiff asserts that "[b]y reason of Defendant's fraudulent or material misrepresentations, deceit, and discriminatory, unfair, and other wrongful conduct . . . targeting [p]laintiff's physical disabilities, said Defendants have violated [O.C.G.A. § 8-3-200 et seq.]." [Id. ¶ 28].

Because plaintiff's proposed amended complaint fails to specify which defendants allegedly engaged in wrongdoing under RESPA and the Fair Housing Act, these vague and conclusory allegations fail to put Bank of America or Countrywide on notice of how they allegedly violated these statutes. As plaintiff has failed to correct the deficiencies in his original complaint, which is incorporated by reference into his proposed amended complaint, and the proposed new claims are not stated with sufficient specificity, plaintiff's motion for leave to amend his

37

complaint, [Doc. 10], is **DENIED**.[23] See <u>Burger King Corp.</u>, 169 F.3d at 1320 (denial of leave to amend warranted on futility grounds when "complaint as amended is still subject to dismissal"); <u>Fla. Power & Light Co. v. Allis Chalmers Corp.</u>, 85 F.3d 1514, 1520 (11th Cir. 1996) (amendment futile if proposed claim could not withstand motion to dismiss); <u>Schowalter v. Ridge</u>, Civil Action No. 1:08-CV-0264-JOF, 2009 WL 812279, at *10 (N.D. Ga. Mar. 27, 2009) (where plaintiff filed motion for leave to amend while motion to dismiss original complaint was pending, court denied motion for leave to amend on futility grounds because amended complaint "[fell] far short of what is required under Fed.R.Civ.P. 8, [did] not cure any of the deficiencies of [p]laintiff's original complaint [which was a shotgun pleading], and would still be subject to dismissal").

C.     **Dismissal With Prejudice**

Defendants request that plaintiff's complaint be dismissed with prejudice. [Doc. 3-2 at 21]. "Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." <u>Bryant v. Dupree</u>, 252 F.3d

---

[23] In addition to pointing out that plaintiff's proposed amended complaint is still a shotgun pleading, defendants argue that plaintiff fails to state actionable RESPA or Fair Housing Act claims. [Doc. 11 at 5-7]. However, the Court does not reach the merits of defendants' arguments since leave to amend is denied on the grounds stated.

1161, 1163 (11th Cir. 2001) (*per curiam*) (internal marks, citation, and alteration omitted). However, if the amendment would be futile, it need not be allowed. Id. Here, the TILA claims, and several of plaintiff's state law claims, are time-barred, and it would be futile to allow an opportunity to amend the complaint as to those claims. See Patten v. Fleming, No. CV 108-101, 2008 WL 4200326, at *1 (S.D. Ga. Sept. 12, 2008) ("As [p]laintiff's proposed amendment does not alter the analysis that his claims are time-barred, the amendment is futile, and the request to proceed based on the proposed amended complaint is denied."). Moreover, plaintiff has had an opportunity to amend his original complaint, but he failed to cure the shotgun pleading and correct other admitted deficiencies in the original complaint. Under these circumstances, it is **RECOMMENDED** that plaintiff not be afforded further opportunity to amend the complaint, and the claims asserted in plaintiff's original complaint be **DISMISSED WITH PREJUDICE**. See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 680 F. Supp. 2d 1359, 1369 (N.D. Ga. 2009) (granting motion to dismiss for failure to state a claim where plaintiff already had one opportunity to amend complaint and it would be futile to give plaintiff another chance to amend and state a viable claim); Patten, 2008 WL 4200326, at *3, adopted at *1. See also Walker v. Hallmark Bank & Trust, Ltd., No.

39

09-61978-CIV, 2010 WL 1226141, at *5 (S.D. Fla. Mar. 27, 2010) (dismissing complaint with prejudice where amendment would be futile).

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to amend the complaint, [Doc. 10], is **DENIED**, and it is **RECOMMENDED** that defendants' motion to dismiss plaintiff's complaint, [Doc. 3], be **GRANTED**, and that the claims asserted in plaintiff's original complaint be **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to terminate the reference.

**IT IS SO ORDERED** and **RECOMMENDED**, this 8th day of June, 2010.

Russell G. Vineyard
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

40